## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ] | |
| | ] | |
| | ] | |
| **V.** | ] | **Cr. No. 04 - 10115-RCL** |
| | ] | |
| | ] | |
| **KEVIN VICKERS** | ] | |

### SENTENCING MEMORANDUM OF KEVIN VICKERS

Now comes the defendant, Kevin Vickers, by and through his attorney, and hereby respectfully submits this Sentencing Memorandum to assist the Court in the preparation and imposition of a fair and just sentence in this case.

**I. Procedure**:

The defendant is charged in Counts One and Two of a Seven Count Superceding indictment. Count One alleges that on July 8, 2003 Mr. Vickers possessed with intent to distribute crack cocaine within 1000 feet of a playground in contravention of the provisions of 21 United States Code §§ 841 (a)(1) and 860(a). Count Two alleges that Mr. Vickers, on July 10, 2003, committed the same offense with a codefendant, Spencer Gray.

The Court allowed the defendant's motion for a pre-plea presentence investigation and report. He has received the report and has reviewed it. He plans to enters a guilty subject to the objections filed in connection with the report.

-1-

**II. Facts and Discussion:**

The acts that constitute the offenses set out in the two counts of the indictment are as follows:

(1) It is alleged that on July 8, 2003 Mr. Vickers sold .20 grams of crack cocaine to an undercover agent (UC) for $20.00.

(2) It is further alleged that on July 10, 2003 a UC attempted to buy $60.00 worth of crack cocaine from Mr. Vickers, but he had none. Instead, he directed the UC to two other individuals, one of whom sold the UC $20.00 worth of crack and the other (codefendant Spencer Gray) sold $40.00 worth of crack to the UC.. The aggregate of these two sales on July 10th is .38 grams of crack.

The dominant sentencing-related issue in this case is the categorization of Mr. Vickers as a Career Offender and the repercussions it has on the sentencing scheme. According to the Presentence Report (PSR) the guideline range for Mr. Vickers is 188 to 235 months.

The defendant recognizes that the United States Sentencing Guidelines (USSG) were made "advisory" by the decision of the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005). Mr. Vickers strongly urges that a sentence well below the calculated guideline range is an appropriate sentence in this case. Furthermore, Mr. Vickers challenges the conclusion that he is in fact a Career Offender in that this conclusion was erroneously reached by a misapplication of the USSG. The defendant addresses the USSG issues first below.

The guideline calculation that places Mr. Vickers in the Career Offender category is the result of the application of the provisions of USSG § 4B1.1 ( c ). The PSR assumes that Mr. Vickers was convicted of two felonies which were either crimes of violence or involved an applicable controlled substance. In the Probation Officer's Second Addendum to the Presentence Report states that, "The only two Career Offender predicates are detailed in paragraphs 49 and 52 of the PSR

-2-

(A&B Family Abuse and Breaking and Entering Daytime) thererfore the Probation Officer's Response if focused on these two cases ..."

The Response substantially says that the A&B, although a misdemeanor by definition under the criminal statutes of the Commonwealth of Massachusetts, it is scored as a felony for purposes of guideline calculation since the maximum term of imprisonment exceeds one year. The Court will certainly be aware that the vast majority of offenses specifically classified by Massachusetts as misdemeanors carry a sentence involving incarceration in the county jail of up to 2 ½ years.

The more disturbing, and in our view erroneous, calculation comes by way of identifying the Breaking and Entering Daytime misdemeanor as a "crime of violence". Although the defendant does not specifically disagree that USSG § 4B1.2 (a) (2) places "burglary of a dwelling" into the violent crime category, the defendant was neither charged nor convicted of burglary. The record before the court indicates that Mr. Vickers was convicted of B & E Daytime with Intent to Commit a Felony. That is an entirely different crime, and specifically does not carry with it an element of violence or fear.  The definitions of the two distinct crimes are as follows:

**c. 266, § 15. Unarmed Burglary.**

*Whoever breaks and enters a dwelling house **in the night time**, with the intent mentioned in the preceding section, or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein, shall be punished by imprisonment in the state prison for not more than twenty years and, if he shall have been previously convicted of any crime named in this or the preceding section, for not less than five years.* (Emphasis added.)

**c. 266, § 18. Entering Dwelling House in Night Time or Breaking, etc., Without**

-3-

**Putting in Fear, in Day Time.**

*Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or motor vehicle or vessel, with intent to commit a felony, **no person lawfully therein being put in fear**, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years. Whoever commits any offense described in this section while armed with a firearm, rifle, shotgun, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than five years or by imprisonment in the house of correction for not more than two and one-half years.*

(Emphasis added.)

Based upon the foregoing, and an examination of the defendant's record, he does not qualify for classification as a Career Offender and therefore the Total Offense Level should be level 15 instead of level 31. Further calculating, if the Criminal History Category is IV and the offense level is 15, the resulting yield should be 30 - 37 months under the advisory guidelines.

A further argument by the defendant is that if the Court were to adopt the PSR guideline calculation without adjustment, he is eligible for a downward departure under USSG § 4A1.3(b)(1) in that his criminal history category substantially over-represents the seriousness of his criminal record. This argument is based upon the substantially low-level nature of the crimes for which he has been convicted in the past. The record is before the Court, and the defendant sees no need to reproduce it here. It is sufficient to note that the crimes, especially the two offenses relied upon (accurately or erroneously) to place Mr. Vickers in the Career Offender classification, although in contravention of Massachusetts misdemeanor statutes, should be viewed as outside the realm of what the USSG had anticipated would fit the profile of a dangerous Career Offender and is outside the "heartland" of the USSG. See, United States v. Rivera, 994 F. 2d 942, 948 (1st. Cir. (1993).

-4-

Long prior to the decision in *Booker*, the Supreme Court recognized that there needed to be uniformity in sentencing and a reduction in unjustified disparities in sentencing. The Supreme Court stated:

> *The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This, too, must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the* United States District Judge *Koon v. United States, 518 S.Ct. 2035, 2053 (1996).*

The defendant's involvement with codefedants is described in Count Two fo the indictment. There the defendant is said to have had some relationship with Spencer Gray, who pleaded guilty to six counts of the indictment, including the count alleging a joint venture with Mr. Vickers to sell $40.00 worth of narcotics to the undercover DEA agent. Mr. Gray pleaded to six counts of the indictment and received 57 months incarceration followed by 72 months supervised release.

Mr. Prescott, charged in Count 5 of the indictment pleaded guilty to distributing crack cocaine, the playground violation, and aiding and abetting. He received 28 months incarceration followed by 72 months of supervised release.

The suggested sentence of Mr. Vickers according to the USSG is wildly disparate from those imposed by the Court upon other defendants in this case. For example, Prescott admitted being responsible for 1.15 grams of cocaine base on two occasions.. At the most, Vickers is alleged to be responsible for 0.58 grams of cocaine base, roughly half that of Mr. Prescott.

18 U.S.C. Section 3553 (a) (1) mandates that the Court consider the nature and circumstances of the offense and the history and the characteristics of the defendant when imposing a sentence. Further, § 3553 (a)(2)(A) suggests that the sentence reflect the seriousness of the offense and to provide just punishment for the offense. Focusing on the conduct of Mr. Vickers, at most, the indictment alleges that he sold $20.00 of cocaine base on the first night of the controlled buy and referred the undercover agent to others in order to cobble together a maximum of $40.00 worth of substance on the second night of the operation. This scenario does not give rise to the conclusion or even the suggestion that Mr. Vickers was any type of big time drug dealer.

Section 3553 (a)(2)(B) requires the Court to impose a sentence that affords adequate deterrence to future criminal conduct. Mr. Vickers' criminal history is unremarkable in terms of seriousness and shows no pattern of violence or drug dealing. **It is also noteworthy to mention that the domestic A&B crime was committed when he was 17 years old.** Also, it is noteworthy that the complaining witness, the mother of his two children, told the Probation Officer that there has been "no physical violence between them" (¶ 78 of PSR).

Looking at § 3553 (a)(2)( C ) requiring the Court to impose a sentence that protects the public from further crimes committed by the defendant, it is respectfully suggested that taking into account the past behavior of the defendant's violence-free lifestyle, a sentence of the magnitude of twelve years is not necessary to protect the public. A sentence more in line with those of the codefendants and with the 30 -37 month calculation is more than sufficient punishment for the offense and is more than sufficient to protect the public interest and safety.

The defendant has two children who it seems are experiencing difficulty with health care and obtaining adequate food and depend from time to time upon the defendant's parents to supply additional money to supplement the assistance provided by the Commonwealth of Massachusetts.

**III Conclusion:**

Based upon the foregoing, it is respectfully requested that the Court impose a sentence of 36 months incarcerations followed by 72 months of supervised release.

Respectfully submitted
By his attorney,


S/ James J. Cipoletta
_____
James J. Cipoletta
BBO# 084260
385 Broadway
Revere, MA 02151
781.289.7777

Dated: 19 August 2005


**CERTIFICATE OF SERVICE**

I, James J. Cipoletta, attorney for the defendant, hereby certify that I have served a copy of the foregoing upon the Government by electronic filing of this memorandum and by mailing a copy to David Tobin, Assistant United States Attorney.


S/ James J. Cipoletta
_____
James J. Cipoletta